UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
DONA PRATESI

                Plaintiff,

        -against-

NEW YORK STATE UNIFIED COURT
SYSTEM, KEN ROLL, and JUDGE
ANTHONY MARANO (in their
official and individual capacities)

             Defendants.
----------------------------------------------------X

**MEMORANDUM & ORDER**

Civil Action No. 08-4828
(DRH)(MLO)

**Appearances:**

**Leeds, Morelli & Brown, PC**
Attorneys for Plaintiff
One Old Country Road, Suite 347
Carle Place, New York 11514
By:    Thomas Ricotta, Esq.

**Michael Colodner, Office of Court Administration**
Attorney for Defendant New York State Unified Court System
25 Beaver Street - 11th Fl.
New York, New York 10004
By:    John Eiseman, Esq.

**Andrew M. Cuomo, Attorney General of the State of New York**
Attorney for Defendants Kenneth Roll and Judge Marano
300 Motor Parkway, Suite 205
Hauppauge, New York 11788
By:    Anne C. Leahey, Esq., Assist. Attorney General

**HURLEY, Senior District Judge:**

        Plaintiff Dona Pratesi ("Plaintiff") commenced this action against Defendants New York

State Unified Court System ("NYSUCS"), Ken Roll ("Roll"), and Judge Anthony Marano

("Marano")[1] alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); 42 U.S.C. § 1983; and N. Y. Exec. Law § 290 et seq. ("Human Rights Law"). Presently before the Court are motions by the defendants to dismiss the amended complaint. For the reason set forth below, the motions are granted in part and denied in part.

## Factual Background

The following allegations are taken from the amended complaint ("AC") and presumed true for purposes of this motion to the extent they are factual and not conclusory.

Roll is the Chief Clerk of the NYSUCS's district courts and as such is responsible for, inter alia, the hiring, firing, promotion, and discipline of employees. Marano is the supervising Judge for the Nassau County District of the NYSUCS and as such is responsible for the hiring, firing, promotion, and discipline of employees. (AC ¶¶ 7-8.)

Plaintiff is a woman of same sex orientation and in 1983 began working for the NYSUCS as a Court Assistant, grade 16. In 1986 she interviewed for the position of Deputy Commissioner Jurors, grade 23. Although she was told she was the most qualified applicant and would get the job, Commissioner Tom DeVivo hired the supervising judge's secretary for the job. (AC ¶¶ 9-10.)

In 1988, while at a professional conference, two male clerks told jokes relating to those of same-sex orientation, in the presence of Plaintiff, who was know to be of same-sex orientation. Also that year, Plaintiff was put under the supervision of Eileen Bianchi, who began harassing Plaintiff and spread a false rumor that Plaintiff slashed her tires because she (Bianchi) had

_____

[1] Roll and Marano shall be collectively referred to as "Individual Defendants."

2

rejected Plaintiff's sexual overtures. Plaintiff was thereafter transferred from Nassau County Court to Nassau County District Court. Immediately thereafter, it was circulated around the District Court that Plaintiff was gay. (AC ¶¶ 11-14.)

In 1991, Plaintiff was promoted to Senior Court Clerk, grade 21. She was again promoted in 1998 to an Associate Court Clerk, grade 23, and put in charge of the 4th District Court in Hicksville, New York. (AC ¶ 15.) In October 2000, Plaintiff was "promoted, yet again - this time to Principle Court Clerk, grade 26. She was hired to replace the grade 26 clerk in charge of the civil office in the 1st District . . . a prestigious and desirable position. Despite receiving the promotion . . . Plaintiff was never moved to the 1st District. Rather, a criminal court clerk was in put in charge of the civil office . . . ." (*Id.* ¶ 16, 17.)

In early 2001, Plaintiff, while disciplining a lower grade employee for insubordination, was called into Roll's office. Roll at that time was Deputy Chief Clerk, and he told Plaintiff that the women in the office downstairs were afraid of her and told her she "comes across a little rough." Because he perceived Plaintiff, as a gay female, not be to be feminine enough, Roll directed her to cease going downstairs and to send another clerk, even those of a lower grade, to go instead. (AC ¶¶ 18-19.)

Plaintiff applied for the position of Deputy Chief Clerk in County Court in October 2001. At that time she was a grade 26 clerk but did not get the position. Instead, a lesser qualified male employee who was a grade 18 court officer, with no administrative or legal experience, was hired. (AC ¶ 20.)

In the beginning of 2003, a meeting was held in the Chief Clerk's office between Roll and two Principal Court Clerks, Benganskas and Shimonsky, to discuss the possibility of Plaintiff

coming to the court as Deputy Chief Clerk. Shimonsky was overhead by another clerk as saying, "What is she going to do, come in and paint the office pink?" (AC ¶ 21.)

In May 2003, Plaintiff applied for a Court Clerk Specialist position in Nassau County Supreme Court. The position required a grade 26 or higher or a law degree, plus three years experience. Plaintiff, who had been a grade 26 for three years, was denied the position and it was given to a male who had never achieved more than a grade 21 position. (AC ¶ 22.)

Plaintiff then applied for a Senior Management Analyst position in September 2003. The position was given to a less qualified grade 21 clerk who was bumped to a grade 25 and then a grade 28 in order to qualify for the job. (AC ¶ 23.)

In February 2004, Plaintiff applied for the position of Deputy Chief Clerk in District Court, where she had previously worked for seventeen years directly under the then recently retired Deputy in charge of the Civil Department. The position was given to a lesser qualified grade 26 male, even though he had only two years of experience in District Court. (AC ¶ 24.)

In June 2005, Plaintiff was removed from her position as Clerk of the 3rd District, where she had been working since the close of the 4th District, and was transferred to the 1st District in Hempstead where she was given a job with no supervisory responsibility which was previously held by a grade 23 employee. When Plaintiff inquired why she was not being given a department head position when she had the credentials for one and was being stripped of supervisor responsibilities, she was told by Roll that the court system was "making changes." According to Plaintiff the action was taken because of her gender and/or sexual orientation. (AC ¶¶ 25-26.)

After years of "discriminatory denials of transfers and promotions, Plaintiff filed a complaint with the Inspector General" ("IG"). As a result of her filing, she was called into the

office of Marano, Supervising Judge for the Nassau County District of the NYSUCS.  Marano

asked Plaintiff if she would consider transferring to the Matrimonial Center.  When Plaintiff

explained that such a transfer could cause her to lose six to seven thousand dollars in overtime,

Marano responded that he had the power to transfer her anywhere in Nassau County.   Perceiving

this to be a threat that she would be transferred somewhere less desirable if she did not agree to

go, Plaintiff was "coerced" into "accept[ing] this retaliatory transfer."   She was subsequently

contacted by the IG who informed her that in light of her transfer, they considered her case

settled.  (AC ¶¶ 27-28.)

In January 2008, Plaintiff applied for the position of Court Clerk Specialist.  The position

was given to an unqualified male clerk who was bumped from a grade 21 to a grade 25 and then

to a grade 28.  It is claimed that the "[unspecified] Defendant went so far as to change the job

description on that position so that the lesser qualified male could be considered" and "awarded

the position over Plaintiff."  (AC ¶¶ 29- 30.)

On or about January 8, 2008, Plaintiff applied for two Deputy Chief Clerk positions.  In

the interview she noted that although 65% of NYSUCS's the workforce in the Nassau County is

female, only approximately 20% of positions grade 28 and above are awarded to females and all

grade 30 positions are held by men.  On her application form, Plaintiff checked off that she had

minority status as she is 25% Spanish.  After seeing this another candidate for the position stood

up and loudly asked, "If I say I'm gay too, can I get a promotion?"   Plaintiff was denied both

positions in favor of lesser qualified employees "outside her protected class."  According to

Plaintiff, despite her over twenty-five years experience, she is continually denied promotions and

job positions to which she is entitled due to her gender and sexual orientation and/or in

retaliation for her complaints of discrimination. (AC ¶¶ 31-33.)

Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") on April 11, 2008, which was cross-filed with the EEOC. On November 14, 2008, the EEOC issued a right to sue letter.

Plaintiff filed her complaint in the instant action on December 1, 2008. Plaintiff asserts the following claims: (1) a Title VII claim against NYSUCS for hostile work environment, discrimination and retaliation based on her gender, and/or opposition to discriminatory practices; (2) claims under the New York State Human Right Law against NYSUCS for hostile work environment, discrimination and retaliation based on her gender, sexual orientation, and/or opposition to discriminatory practices and against Roll and Marano for aiding, abetting, and participating in said conduct: and (3) a claim against NYSUCS, Roll, and Marano under § 1983 for injunctive relief for alleged violation of her Fourteenth Amendment rights.

## Discussion

### I.    Motion to Dismiss Standard

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562.

Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts

to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the grounds of his
> entitlement to relief requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do. Factual allegations
> must be enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even if doubtful in
> fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court

provided further guidance, setting a two-pronged approach for courts considering a motion to

dismiss. First, a court should "begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. "While legal

conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555)).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged. The plausibility
> standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully.

> Where a complaint pleads facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'show[n]' - - that the pleader is entitled to relief." *Id.* at 1950.

## II. The NYSUCS's Motion to Dismiss

The NYSUCS has moved to dismiss the claims against it based on the following arguments: (1) the § 1983 and Human Rights Law claims are barred by the Eleventh Amendment; (2) the Title VII claims based on Plaintiff's sexual orientation fail to state a claim; (3) except for the allegations relating to gender discrimination in connection with Plaintiff's January 2008 application for two Deputy Chief Clerk positions, all of the other factual allegations are time barred. The Court shall address the arguments ad seriatim.

### A. Eleventh Amendment Immunity

"Absent consent to suit in federal court, or an express statutory waiver, the Eleventh Amendment bars a suit in federal court by a citizen of a state against that state or one of its agencies." *Bland v. New York,* 263 F. Supp. 2d 526, 534 (E.D.N.Y. 2003) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984)). Its bar extends to state law claims in federal court against a state and its agencies. *Society for Good Will to Retarded Children, Inc. v. Cuomo*, 737 F.2d 1239, 1248 (2d Cir. 1984) "An official arm of a state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself. . . . The State Office of Court Administration is an arm of the state and therefore immune." *Posr v.*

*Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999). The Eleventh Amendment bars Plaintiff's 1983 and Human Rights Law claims against the NYSUCS. *See id.*; *Bland*, 263 F. Supp. 2d at 534; *see also Lamere v. New York Sate Office for the Aging*, 2005 WL 1174068, *14 (N.D.N.Y. Apr. 27, 2005) (holding Human Rights Law claims against state agency barred by Eleventh Amendment); *Lee v. New York State Dept. of Health*, 2001 WL 34031217, *7-8 (S.D.N.Y. Apr. 23, 2001) (same). Plaintiff's reliance on *Koerner v. State of New York*, 62 N.Y.2d 442 (1984) is misplaced. *Koerner* concerned common law sovereign immunity and not Eleventh Amendment immunity. *See id.*; *see also Small v. Caiola*, 2000 WL 781080, *2 (S.D.N.Y. June 19, 2000).

The motion of the NYSUCS to dismiss the 1983 and New York Human Rights Law claims against it is granted.

**B.    Title VII Claim**

1.    Discrimination Based on Sexual Orientation

The first argument raised by the NYSUCS is support of dismissal of the Title VII claims against it is that Plaintiff has failed to state a claim to the extent her Title VII claim is based on sexual orientation discrimination.

Title VII protects individuals who are discriminated against on the basis of "race, color religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). "Sexual orientation in not included in the statutory protected class." *Kiley v. American Soc. for Prevention of Cruelty to Animals,* 296 Fed. Appx. 107 (2d Cir. Oct. 2, 2008) (Summary Order) (citing *Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000) ("the law is well settled in this circuit and in all others to have reached the question that the plaintiff has no cause of action under Title VII because Title VII does not

prohibit harassment or discrimination because of sexual orientation.")); *see also Dawson v. Bumble & Bumble*, 398 F.3d 211, 217-18 (2d Cir. 2005) ("[T]o the extent that [the plaintiff] is alleging discrimination based upon her lesbianism, [she] cannot satisfy the first element of a prima facie case under Title VII because the statute does not recognize homosexuals as a protected class."). Indeed, Plaintiff concedes as much, stating, "she does not bring a claim for sexual orientation discrimination under Title VII, but rather, brings that claim under Section 1983 and the New York State Human Rights Law . . . ." (Pl.'s Mem. in Opp. at 2 n.3.) Given Plaintiff's statement that she is making no such Title VII claim, this portion of the motion to dismiss is moot.

           2.      Timeliness of Claims

       NYSUCS's second argument in support of dismissal of the Title VII claims is that only factual allegations in the complaint concerning gender discrimination that occurred after June 6, 2007 are timely; all other allegations are time-barred. It is to this argument that the Court now turns.

       Before filing a complaint in federal court, a Title VII claimant must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC and receiving a "right to sue" letter. *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999). In New York, a claimant must file the charge within 300 days of the alleged unlawful act. *See* 42 U.S.C. § 2000e-5(e); *Tewksbury*, 192 F.3d at 327-28; *see also Stuevecke v. N.Y. Hosp. Med. Ctr. of Queens*, 2003 WL 22019073, at *3 (E.D.N.Y. Aug. 26, 2003) (citing 42 U.S.C. § 2000e-5(e)(1)). The filing requirement is analogous to a statute of limitations, barring all claims arising outside the 300-day period. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712

(2d Cir. 1996). Like statutes of limitations, the time limits for filing with the EEOC "are subject

to 'waiver, estoppel, and equitable tolling.'" *Mazurkiewicz v. New York City Health & Hosp.

Corp.*, 2009 WL 4825381, *1 (2d Cir. Dec. 16, 2009) (Summary Order) (quoting *Zipes v. Trans

World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

The 300-day limitation period generally begins to run when the plaintiff knows or should

know of the occurrence of the alleged discriminatory act. *Morse v. Univ. of Vt.*, 973 F.2d 122,

125 (2d Cir. 1992). That is, the time bar is based on when the discriminatory acts happen, not

when their effects are felt. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980). The Supreme

Court has made it clear that "discrete discriminatory acts are not actionable if time barred, even

when they are related to acts alleged in timely filed charges. Each discrete discriminatory act

starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*,

536 U.S. 101, 113 (2002). "Discrete discriminatory acts" include "termination, failure to

promote, denial of transfer, or refusal to hire." *Id.* at 114 (emphasis added).[2]

---

[2] In *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618 (2007), the Supreme
Court held that an employer's decision with respect to setting pay is a discrete act of
discrimination, and that the relevant period of limitations begins to run when the act first occurs.
The *Ledbetter* decision was effectively overturned by the enactment of the "Lilly Ledbetter Fair
Pay Act of 2009" ("The Ledbetter Act"), which amended, inter alia, 42 U.S.C. § 2000e-5(e) to
add the following provisions:

> (3)(A) . . .[A]n unlawful employment practice occurs, with respect
> to discrimination in compensation in violation of this title, when a
> discriminatory compensation decision or other practice is adopted,
> when an individual becomes subject to a discriminatory
> compensation decision or other practice, or when an individual is
> affected by application of a discriminatory compensation decision
> or other practice, including each time wages, benefits, or other
> compensation is paid, resulting in whole or in part from such a
> decision or other practice.

Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 3, 123 Stat. 5, 5-6. The Ledbetter Act

Plaintiff's administrative complaint was filed with the New York Division of Human

Rights on April 11, 2008 and therefore only discrete acts of gender discrimination that occurred

within 300 days thereof, i.e. after June 15, 2007, are timely.[3] Thus, to the extent Plaintiff seeks

to recover for any discrete acts of disparate treatment sex discrimination, such as a failure to

promote, or retaliation[4] which occurred prior to June 15, 2007,[5] her claims are time-barred.

To the extent Plaintiff alleges a hostile work environment because of her sex, the result

_____

deems each paycheck issued pursuant to a discriminatory compensation decision or pay structure an independent, actionable act.  It applies retroactively "to all claims of discrimination in compensation under Title VII . . . that are pending on or after [May 28, 2007]." Id. at 123, Stat. 5, 6-7.

The Ledbetter Act does not impact this Court's analysis of the timeliness of Plaintiff's claims given the absence of any claim of compensation discrimination. *See Moore v. Napolitano*, 2009 WL 4723169, * 10 n. 6 (E.D. La. Dec. 3, 2009) (holding Ledbetter Act does not apply to a failure to promote claim because such a claim is not a "discriminatory compensation" claim); *cf. Vuong v. New York Life Insur. Co.*, 2009 WL 306391, * 7-8 (S.D.N.Y. Feb. 6, 2009) (applying Ledbetter Act to discriminatory compensation claim but not failure to promote claim), *aff'd*, 2010 WL 93157, *1 (2d Cir. Jan. 12, 2010) (Summary Order).

[3] NYSUCS argues that the earliest possible date for any actionable violation is June 6, 2007, based on a filing date of April 1, 2008.  However, it is clear that in fact the filing with the New York State Division of Human Rights was April 11, 2008, not April 1, 2008, and therefore the operative date for statue of limitations purposes is June 15, 2007, not June 6, 2007 as set forth in defendant's papers.

[4] Title VII "forbids an employer to retaliate against an employee for, inter alia, complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-3(a)). The allegations concerning the statements made by Plaintiff in her January 2008 interview for Deputy Chief Clerk concerning the lack of females in higher grade positions may be read as raising a retaliation claim.

[5] There is apparently a disparity between paragraph 29 of the amended complaint, which alleges Plaintiff applied for a court clerk specialist position in January 2008, and paragraph 16 of the complaint she filed with the NYSDHR, which alleges she applied for that position in March 2007.  If, in fact, she was denied that position in January 2008, the disparate treatment claim thereon is timely; if she was denied the position in March 2007, it is time-barred.

differs.  "When, as in this case, a plaintiff's allegations of discrimination extend beyond the 300-day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct. For example, in the case of a hostile work environment claim, the statute of limitations requires that only one sexually harassing act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider 'the entire time period of the hostile environment' in determining liability."  *Petrosino v. Bell Atlantic*,  385 F.3d 210, 220 (2d Cir. 2004) (citing *Morgan,* 536 U.S. at 117).  Because Plaintiff does point to some allegedly gender-hostile actions occurring after June 15, 2007, her hostile work environment claim is timely and earlier events may be considered in support of this claim.[6] *See id.*

The motion to dismiss on statute of limitations grounds is granted solely to the extent Plaintiff seeks to recover for any discrete acts of disparate treatment sex discrimination, such as a failure to promote, or retaliation which occurred prior to June 15, 2007; it is denied as to her gender hostile work environment claims.

### III.    Individual Defendants' Motion

Roll and Marano seek dismissal of the § 1983 and Human Rights Law claims asserted against them on the following grounds: (1) the § 1983 allegations regarding discrete events prior to December 1, 2005 are time-barred; (2) the Human Rights Law allegations regarding events prior to May 5, 2005 are time barred; (3) Plaintiff has failed to state a cause of action for hostile

---

[6] In view of the case law regarding the inapplicability of Title VII to gender orientation claims, Plaintiff's Title VII hostile work environment is assertable only to the extent she is claiming a hostile work environment based on her sex.

work environment based on gender discrimination or sexual orientation under either § 1983 or the Human Rights Law; and the hostile work environment claims under § 1983 and Human Rights Law are time-barred except for those arising from the events in 2008.  It is to these arguments that the Court now turns.

### A. Timeliness of § 1983 Claims Based on Discrete Acts

Section 1983 claims which accrue in New York are governed by a three year statute of Limitations.  *See, e.g., Cloverleaf Realty of New York v. Town of Wawayanda*, 572 F.3d 93 (2d Cir. 2009).  The instant lawsuit having been filed on December 1, 2008, Plaintiff's § 1983 claims based on discrete events occurring before December 1, 2005 are time-barred.  Plaintiff's argument that these claims are actionable under the continuing-violation theory fails. As noted earlier, the Supreme Court has made it clear that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Morgan*, 536 U.S. at 113.  "Discrete discriminatory acts" include "failure to promote [and] denial of transfer."  *Id.* at 114.  The motion to dismiss the § 1983 claims based on discrete acts which occurred before December 1, 2005 is granted.  *See Washington v. County of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (decision to file disciplinary charge against plaintiff is a single act discrete in nature; although the decision could be revisited, "doing so would not have turned the act of filing the charges into a continuous or ongoing policy or practice" as to support a continuing violation claim).

Additionally, given the absence of any specific factual allegations regarding the

participation of Roll or Marano in any discrete discriminatory acts after December 1, 2005,[7] to

the extent Plaintiff seeks to hold them liable for the denial of promotions in 2008, said claim is

dismissed.  Merely holding a position of responsibility is insufficient to impose liability under §

1983.  *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996) (citations omitted).  A defendant in a §

1983 action may not be held liable unless there is a showing of personal involvement, *i.e.*, direct

participation or failure to remedy the alleged wrong after learning of it or creation of a policy or

custom under which unconstitutional practices occurred.  *Id.*

> It is well-settled in this Circuit that 'personal involvement of
> defendant in alleged constitutional deprivations is a prerequisite to
> an award of damages under § 1983.' . . . The personal involvement
> of a supervisory defendant may be shown by evidence that; (1) the
> defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation
> through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the
> defendant exhibited deliberate indifference . . . by failing to act on
> information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir. 1995) (citations omitted).  *But cf. Sash v. United*

*States,* – F. Supp. 2d –,  2009 WL 4823669, *9 (S.D.N.Y. Dec. 15, 2009) (noting that the

Supreme Court's decision in *Ashcrof*t, 129 S. Ct. 1949, may have effectively nullified several

categories of supervisor liability enunciated in *Colon*).  Here, there is an absence of any specific

factual allegations to support liability of these two individuals for the alleged discriminatory

---

[7]  The allegations specifying conduct by Roll allege conduct occurring in 2001 and June
2005.  *See* AC ¶¶ 18, 19 and 25.  Similarly, the conduct specifically alleged by Marano occurred
in the summer of 2005.  *See* AC ¶ 27.

denial of promotions to Plaintiff in 2008.

Accordingly, to the extent the § 1983 claim seeks relief against Roll & Marano based on discrete acts of discrimination, the motion to dismiss is granted.[8]

**B.  Timeliness of Human Rights Law Claims Based on Discrete Acts**

Claims brought pursuant to the New York Human Rights Law, like § 1983 claims, are subject to a three year statute of limitations. NY CPLR 214(2).  The statute of limitations for a Human Rights Law claim, however, is tolled during the pendency of a complaint filed with the New York State Division of Human Rights.  *Penman v. Pan American World Airways, Inc.*, 69 N.Y.2d 989 (1987).  Here, the statute of limitations was tolled from April 11, 2008 until October 27, 2008, a total of 199 days.  Accordingly, Plaintiff's Human Rights Law claims based on discrete acts occurring before May 15, 2005 are time-barred and are dismissed.

**C.  § 1983 and Human Rights Law Gender Hostile Work Environment Claims**

Individual Defendants' motion to dismiss the hostile work environment claims is premised on the arguments that Plaintiff's "allegations of hostile work environment represent only isolated instances of harassment and do not show the kind of severe discriminatory intimidation that is required to state a cause of action for a hostile work place,"  (Indiv. Defs.' Mem in Supp. at 6), and that most of the claims are barred by the  statute of limitations (*Id*. at 12).

The existence of an actionable hostile work environment for purposes of the Human Rights Law and § 1983 is analyzed under the same principles applied in Title VII hostile work

---

[8]  To the extent Plaintiff can plead facts to support the liability of either Roll or Marano for discrete acts which are not time-barred, she may seek leave to further amend her complaint.

environment cases. *See, e.g.*, *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998)*; Mack v. Port Authority*, 225 F. Supp.2d 376, 386 (S.D.N.Y. 2002). "An actionable discrimination claim based on hostile work environment . . . is one for which 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment.'" *Kassner v. 2nd Avenue Deli. Inc.*, 496 F.3d 229, 239 (2d Cir. 2007) (quoting *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)).

To establish a hostile work environment claim, a plaintiff must prove "[1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). The plaintiff must "show that the complained of conduct: (1) 'is objectively severe or pervasive - that is, creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [protected class].'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (ellipses in original omitted) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)). In other words, the plaintiff "must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his/]her employment were thereby altered." *Alfano*, 294 F.3d at 373 (internal citations omitted).

"This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the

victim must also subjectively perceive that environment to be abusive." *Id.* at 374 (quoting

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In analyzing a plaintiff's case, "courts

examine the case-specific circumstances in their totality and evaluate the severity, frequency, and

degree of the abuse." *Id.* (citing *Harris*, 510 U.S. at 23). Relevant factors include "'the

frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23). "But it is well settled in

this Circuit that even a single act can meet the threshold if, by itself, it can and does work a

transformation of the plaintiff's workplace." *Id.* (citing *Howley v. Town of Stratford*, 217 F.3d

141, 154 (2d Cir. 2000) and *Richardson v. N.Y. State Dep't of Corr. Serv.,* 180 F.3d 426, 437 (2d

Cir. 1999)).

> As the Second Circuit has noted on more than one occasion:

> > While the standard for establishing a hostile work
> > environment is high, we have repeatedly cautioned
> > against setting the bar too high, noting that "[w]hile
> > a mild, isolated incident does not make a work
> > environment hostile, the test is whether 'the
> > harassment is of such quality or quantity that a
> > reasonable employee would find the conditions of
> > her employment altered for the worse.' " (alteration
> > and emphasis in the original).
> > *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (quoting
> > *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d
> > Cir. 2000)). "The environment need not be 'unendurable' or
> > 'intolerable.'" *Id.* In brief, "the fact that the law requires
> > harassment to be severe or pervasive before it can be actionable
> > does not mean that employers are free from liability in all but the
> > most egregious cases." *Id*. (quoting *Whidbee*, 223 F.3d at 70
> > (internal quotation marks omitted)).

*Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004).

"Because the crucial inquiry focuses on the nature of the workplace environment as a whole, a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). "Nor must offensive remarks or behavior be directed at individuals who are members of the plaintiff's own protected class. Remarks targeting members of other minorities, for example, may contribute to the overall hostility of the working environment for a minority employee." *Id.*

Finally, it is axiomatic that in order to establish a hostile work environment, a plaintiff must demonstrate that the conduct occurred because of his membership in a protected class. In other words, "an environment which is equally harsh for . . . both young and old does not constitute a hostile working environment under the civil rights statutes." *See Brennan,* 192 F.3d at 318. *See also Alfano,* 294 F.3d at 374 ("in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex"). "Although incidents comprising a hostile work environment claim need not make reference to any trait or condition on the basis of which the discrimination has occurred, they must occur under circumstance in which the incidents can reasonably be interpreted as having taken place on the basis of that trait or condition." *Parekh v. Swissport Cargo Services, Inc.*, 2009 WL 290465, at * 4 (E.D.N.Y. Feb. 5, 2009) (internal quotations omitted).

       1.     <u>§ 1983</u>

Turning first to the hostile work environment claim under § 1983, the Individual Defendants' motion to dismiss is granted because Plaintiff has failed to allege sufficient facts demonstrating their personal involvement in the hostile work environment. As noted earlier,

merely holding a position of responsibility is insufficient to impose liability under § 1983. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996) (citations omitted). Rather there must be a showing of personal involvement. *Id.*; *see also Johnson v. Barney*, 2010 WL 93110 (2d Cir. Jan. 12, 2010) (Summary Order).

The only allegations specifying conduct by Roll are in paragraphs 18, 19 and 25. Paragraphs 18 and 19 allege that in early 2001 Roll told Plaintiff that the women in the office downstairs were afraid of her, expressed that she "comes across a little rough" and ordered her "to cease going downstairs and to have any other clerk, even those of a lower grade, go downstairs instead." (AC ¶ 18-19.) Paragraph 25 states:

> In or around June 2005, Plaintiff was removed from her position as Clerk of the 3rd District, where she had been working since the close of the 4th District Court, and was transferred to the 1st District Court in Hempstead. She was given a job with no supervisory responsibility, which was previously held by a grade 23 employee. As a grade 26, Plaintiff had the necessary credentials to be a department head. When she inquired as to why she was not being given a department head position, and was rather, being stripped of supervisory responsibilities, she was told by Ken Roll that the Court System was "making changes."

(AC ¶ 25.) These discrete incidents are insufficient to impose personal liability for a hostile work environment upon Roll.[9] There are no factual allegations that Roll actively participated in the other acts alleged in support of the hostile work environment claim, that he was aware of the alleged harassment and failed to remedy it, or that he was grossly negligent in failing to remedy the conduct which gave rise to the alleged hostile work environment. The § 1983 hostile work

---

[9] The Court also notes that these acts occurred more than three years prior to the commencement of this action and therefore even if sufficient to state a claim against Roll for a hostile work environment, the claim would be time barred.

environment claim against Roll is dismissed.

Similarly there is an absence of conduct on the part of Marano which would give rise to his liability for a hostile work environment. The sole allegation against Marano is that shortly after June 2005, Plaintiff filed a complaint with the Inspector General and as a result she was called in to Marano's office. "Marano asked [her] if she would consider transferring to the Matrimonial Center. Plaintiff explained that the transfer would cause her to lose six to seven thousand dollars in overtime. . . . Marano responded by expressing to Plaintiff that the had the power to transfer her anywhere in Nassau County. Plaintiff perceived this to be a threat that she could be sent somewhere less desirable if she did not agree to go the Matrimonial Center." (AC ¶ 27.) Again there are no factual allegations that Marano actively participated in other acts, such as the denial of promotions, alleged in support of the hostile work environment claim, or that he was aware of the hostile work environment and failed to remedy it. Accordingly, the § 1983 hostile work environment claims against Marano are dismissed.[10]

2. Human Rights Law

The Human Rights Law makes it unlawful for " an employer . . ., because of an individual's . . . sexual orientation [or] sex . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). Individual liability under the Human Rights Law differs from individual liability under § 1983 in that "[a]n individual supervisor . . . may be sued under Section 296(1) . . . if he is shown either to have an

_____

[10] To the extent Plaintiff can plead facts to support the personal involvement of Marano and Roll, she may seek leave to amend her complaint.

ownership interest or the 'power to do more than carry out personnel decisions made by others.' . . . Individual liability under section 296(1) is limited and includes only supervisors, who themselves, have the authority to 'hire and fire' employees." *Gentile v. Town of Huntington,* 288 F. Supp. 2d 316, 321 (E.D.N.Y. 2003). Here it is alleged that both Marano and Roll were responsible, inter alia, for hiring, firing and disciplining employees and therefore can be individually liable.

The question therefore is whether the allegations are sufficient to state a claim for a hostile work environment. Plaintiff alleges eleven failures to promote, in addition to the six comments/incidents spread out over approximately twenty years. While the allegations in support of the hostile work environment claims are by no means overwhelming, they are sufficient to withstand a motion to dismiss. *Cf. Anderson v. Nassau County Dept. of Corr.*, 558 F. Supp. 2d 283, 295-96 (E.D.N.Y. 2008) (denying summary judgment on hostile work environment claim based on evidence of ten statements, combined with disparate treatment, failure to promote, and improper discipline, all of which occurred over a period of approximately four years).

With respect to the Individual Defendants' contention regarding the timeliness of the allegations regarding the Human Rights Law hostile work environment claim, for the reasons set forth earlier in connection with the Title VII hostile work environment claim, the motion is denied.

## Conclusion

The motion of the NYSUCS to dismiss is granted as to (1) the § 1983 claims; (2) the New York Human Rights Law claims; (3) Title VII claims as to discrete acts of disparate

treatment sex discrimination which occurred prior to June 15, 2007; and is otherwise denied.

Individual Defendants' motion to dismiss is granted as to (1) the § 1983 hostile work

environment and disparate treatment claims; and (2) the Human Rights Law disparate treatment

claims based on discrete acts occurring before May 15, 2005 ; and denied as to the Human Rights

Law hostile work environment claim.

     **SO ORDERED.**

Dated: Central Islip, New York
     February 9, 2010


                    /s/_____
                    Denis R. Hurley
                    Senior District Judge